Case number 19-1893. Andrea Byers versus U.S. Department of Treasury Internal Revenue Service. Arguments not to exceed 15 minutes per side. Mr. Weininger, you may proceed for the appellant. Thank you very much. May it please the court, Daniel Weininger, on behalf of the appellant in this case, Ms. Andrea Byers, I'd like to reserve four minutes for rebuttal, if I may. Yes. I'm at a unique disadvantage in this case, unlike any other appeal I've had in this court or litigation district court. And that is because I have absolutely no idea why the government believes my client violated the Internal Revenue Code. And if I can't discern the reasons why the the district court also could not possibly discern the reasons why the government believes my client violated the code as well. To enforce an IRS summons, the government has to put forth a affidavit or declaration of a revenue agent that demonstrates a reasonable basis to in some way. Where do you get the reasonable basis to believe? Is it from 7609F2? I do get that language from 7609F2. Is there any other place that uses the reasonable basis language? There is. The root of that language comes from two cases. I traced it back to two cases that United States v. Powell cited to in its decision. And United States v. Powell, as this court is well aware, sets the framework for courts to determine whether an IRS summons is sufficient to be enforced. Under Powell, the first prong is obviously the government must make the bare minimum showing of a legitimate purpose for the summons. That being said, with respect to that prong, Powell cited two cases, Morton Salt Company, a prior Supreme Court case from 1950, and it also cited to Oklahoma Press Publishing Company. If I can interrupt you for a second, Powell was decided in 1964. And my understanding is that 7609 was written later. You can correct me if I'm wrong. And 7609F2, which is the key provision with the language you want us to use, applies to John Doe summons, which this is not. That's true. But the language, what Congress appears to have done is merely, and the United States Supreme Court said this in Tiffany Fine Arts, 7609F2 merely incorporates a pre-existing substantive standard. And that substantive standard comes from Powell and comes from the two cases that Powell relied upon, which is again, Morton Salt and the Oklahoma Press Publishing Company case. Counsel, wouldn't it make some standards, one for a John Doe where you don't know who it is and one for one you do? That seems really funny to me to have the same standard for both. I don't think that it's unusual at all, Judge Sutton. In Tiffany Fine Arts, the Supreme Court explicitly said that 7609F, the only difference is a procedural difference. The substantive component of what the district judge looks at in 7609F2 is the very same defense that a taxpayer can raise or a target of an investigation can raise under 7609A and B. And there are actually three Court of Appeals decisions from the early 1980s that support that very proposition. Those two cases are Samuel's Kramer, a Ninth Circuit decision from 1983, Pittsburgh Trade Exchange, a Third Circuit opinion from 1981, and then we have a Second Circuit decision from 1981 that says the exact same thing. And those three cases have the same underlying premise. And that is that an unknown taxpayer does not receive more substantive protection than known taxpayers in the 7609 context. Counsel, maybe a way to think about this is if you're wrong about this argument and the reasonable basis standard doesn't apply to this case, do you lose? No, we don't lose. Okay, so how does the case work in that setting? In that setting, if we go strictly based on saying a legitimate purpose is what it is and reasonable basis plays no role, you still have an issue that there are no factual allegations in the summons whatsoever. All we have in paragraph four of Revenue Agent Conroy's declaration is that he's investigating my client for violating 6700 and 6701 of the code. So just help me out. I'm sure I'm missing something, but that seems pretty specific. I mean, that's the tax shelter provision? That's the tax shelter provision is 6700, and 6701 is aiding and abetting the understatement of tax liability. Okay, so tell me how this should work. I mean, that doesn't seem that vague to me. It sounds pretty precise. Well, from the standards that we have in Powell, and also if this court would take a look at its sister circuit in Gertner, just a bare recitation of I'm investigating someone for violating a provision of the code just doesn't cut it. I mean, it's hard to discern a legitimate purpose if all the revenue agent can muster is that he is investigating someone for a violation of some generic tax provision. And when you have that, which kind of dovetails with the relevance portion of Powell, if you're asking for bank records, you'll always pretty much establish relevance in the tax context. Because when you're dealing with financial matters, bank records are probably almost always going to be relevant. But we have a situation where the revenue agent cannot muster any facts whatsoever to show he has legitimate purpose to believe. And again, this is just suspicion, just a basis to believe the taxpayer or the target violated the code, then you have a failure to establish legitimate purpose. And then... Excuse me, is it a legitimate purpose to investigate someone for an abusive tax shelter? It would be if we had a sufficient factual basis to put that together. You're requiring exactly what? Give me a hypothetical about what the declaration should have included to meet the legitimate purpose. Sure, just the bare minimum would be, I'm investigating the taxpayer or the target for violations of X provision of the code. I believe they violated the code for X, Y, and Z reason. And if you take a look at Praguevich, which is a declaration from the same revenue... I'm sorry. If you take a look at... I'm sorry, Judge Moore. If you take a look at the declaration that the same revenue agent submitted in Praguevich, which is a case that the government relied upon in the district court and in this court, you'll see that the factual content of the declaration is much more substantive almost exponentially than in this case. We know exactly the who, what, when, and where of what Praguevich did and why Conroy in that case was investigating him and asking for the records. Again, I have no idea why... It's very difficult for an attorney to litigate a case like this when you cannot attack the factual assertions of the government. And not only that, but if you take a look at United States versus Clark, which is a Supreme Court decision from 2014, the taxpayer can get an evidentiary hearing and cross-examine the revenue agent if he or she brings forth a plausible inference of bad faith. How can you possibly do that in a case like this where the revenue agent puts forth no factual basis whatsoever for the investigation? Wouldn't a taxpayer know if he or she were doing something that could constitute an abusive tax shelter? Wouldn't the taxpayer know? Because the taxpayer is the one who is filing the tax returns and the taxpayer is the one who's engaging in the business activities. So wouldn't the taxpayer know what was the likely source of the government saying you're engaging in abusive tax shelter? Well, you may have a situation, which is exactly the situation in this case, where my client hasn't done anything. So she has no idea why he's doing the investigation. And as she stated in her declaration... She does know that she is listed as the agent on a bunch of incorporated entities, right? Right. But none of those entities, though, are being investigated by the IRS for the violations of the code that are specified in the revenue agent's declaration. That's number one. Number two, the conduct that she's engaged in is prevalently done in the United States. LegalZoom, for example, is a company that makes LLCs for people that need them, particularly small businesses and people that are not familiar with state law that govern the formation of LLCs. And that's exactly the case. I think Judge Moore's right. If the point is notice and you identify the statutory section, you know what they're looking for and you know you did it or you didn't do it. So I'm not sure it turns entirely unnoticed. It seems to me you kind of want a probable cause, reasonable suspicion type standard before you can do these third party subpoenas. And Powell doesn't say that. I'm just a little bit confused myself as to what is it that the taxpayer should know. I mean, it's the government's burden under Powell to put forth these factors to the district judge on the four factors of Powell. That's the government's burden, right? It doesn't include your requirements. They've satisfied Powell. That's the problem for you. And again, we would posit that they can't satisfy Powell, even if we put aside the reasonable basis argument that we have and the sources for that argument. I don't see how you can possibly put forth a legitimate purpose by just putting forth a bare recitation of I'm investigating someone for violating the Internal Revenue Code. I'm sorry, Judge Griffin. I'm sorry. Also, doesn't your client know that the IRS is investigating her ex-husband for abusive tax shelters? She's aware of that, isn't she? In her declaration, she did not know about the investigation in terms of... Of her ex-husband? Yeah. She even asked the revenue agent, what is this investigation about? And he refused to tell her. And that's pretty much exactly what happened in Gertner is that the IRS revenue agent in that case in Gertner, in the First Circuit, didn't tell the law firm why they, what they were investigating, what they were looking for. So this was all new to her that her ex-husband was under investigation by the IRS? She knew he was under investigation, but she had no idea for what. That's what I thought. Okay. She knew he was for tax shelters, right? No, she did not know that. Well, she knows that from the subpoena. Well, now she knows. Right. She knows that but prior to that, she did not know. And she had asked the revenue agent several times and he would not inform her. Okay. And I assume that probably money was commingled between the two of them or whatever. I mean, when they were married, does she think that it's an abusive investigation of the ex-husband too? I mean, I... Really, with respect to the ex-husband, he's going to have to make his own arguments based on that. My position here in this court is solely based on... You're acting like you're totally surprised that the IRS is interested in these bank records. And my understanding was that she was well aware that the ex-husband had some problems with the IRS and she might get involved in it. That's all. Well, she certainly, again, and to be clear for this panel on the record, she certainly knew the IRS was investigating the ex-husband. She had no idea why. And when she inquired to the revenue agent, what was the basis for the investigation of the ex-husband? He refused to tell her. When she inquired about the basis of the investigation of, not the investigation, but why he was asking her questions, he refused to reveal the substantive content of their investigation. It's exactly on par with what I see. All right. Thank you. For a long time, your red sign has been up, but we've peppered you with questions. Thank you. Mr. Wu? Good afternoon, Your Honors, and may it please the court. My name is Josh Wu here for the Department of Justice representing the United States of America. I want to first respond to the hypothetical that Mr. Weiner noted that a proper declaration from the agent would have been where the taxpayer was investigated for purpose X, and I believe that the provision was violated for X, Y, Z reasons. In this case, the district court found convincingly that the IRS can't, that's sort of putting the cart before the horse. The IRS, when it starts an investigation or an audit, simply won't necessarily know what the X, Y, Z is. They don't know if Ms. Byers, and again, as the court noted, hopefully she hasn't committed a violation of the code, but when they start an audit, they won't know that, and so the agent isn't in a position necessarily to articulate the specific facts which will lead to tax liability. What Powell requires is that the agent show that there's a legitimate purpose, which here in paragraph four of the declaration agent Conway did, he said it's related to penalties under 6700 or 6701, and that the material is not irrelevant, which again agent Conway laid out in his declaration. Counsel, I'm inclined to agree with you that what happened complies with Powell. I'm inclined to agree with you that's the standard that applies here, so those I guess are helpful perspectives from your approach. I will say, maybe this is just my own ignorance, I'm a little surprised how this works. It's obviously very deeply private information to go to someone's bank and look at their private records. I'm frankly just a little surprised that you don't have something like a fourth amendment standard where you have some reasonableness, not an absence of bad faith, but just some reason for getting a deeply private thing. I mean, these bank records could well be in her house, and I suspect you wouldn't be allowed to use Powell to get the records from her business records in her basement. So how did this happen? I'm just surprised. Obviously, I'm a little ignorant about this, but I am a little surprised how easy it is to get this. It's a very good question, Your Honor. There's sort of two reasons, and I'll stick first to the facts of this particular case. First of all, the agent, when he initiated this examination, did send an information document request. This is in his declaration, which is an informal request to Ms. Byers asking for similar documents. Ms. Byers did decline to respond to that, which is not enforceable, and which led to the summons being issued and eventually to where we sit today. In addition, the agent Harmer in his declaration noted he did ask to interview Ms. Byers, and in the interview likely would have asked questions that might have shed some interesting light on this case. All right. Well, so far you've identified a fourth amendment right and a fifth amendment right. It shows she has both. So I'm still puzzled by why the government gets to get something indirectly that it can't get directly without a showing. I'm not making the reasonable basis point. I'm not making the John Doe point. I'm just making a more threshold point. What is it about tax investigations that are different from drug investigations? Well, Your Honor, first of all, this is a civil matter. And second of all, tax investigations under Powell have been given broad latitude. The IRS simply, because we have a voluntary compliance system where everyone, we hope, reports their information accurately, the only way to provide a check on that is to give the IRS power to investigate and ask for this kind of information. And I will note there is a check on the IRS's power that, you know, even, first of all, there are certainly fourth amendment cases as to scope, which hasn't been but in addition there are checks on the government's power. The prima facie case may be a slight burden as the courts noted in Arthur Young, but as Mr. Weininger noted, there is a procedure the Supreme Court set forth in Clark where the taxpayer can show facts that would show some, that would require an evidentiary hearing where they could put the IRS agent on the stand and question the agent with respect to the motive, the purpose, any potential bad faith. And the important civil criminal distinction is how does it work if you get one of these subpoenas, you get the bank records, and you realize not only was the suspect or the individual violating the civil tax code, but was also violating criminal law and therefore, is there a rule that says information obtained from these subpoenas cannot be used in criminal cases? Your Honor, I'm not aware of any rule that bars it. However, there are protections built in. For instance, part of the requirement is in agent Conway's declaration is that no referral to the Justice Department for criminal prosecution has been done at this point. So, there is no ongoing criminal case. Secondly, under the TWEAL standard, the IRS cannot conduct a, what I will call a, use a civil investigation to further a criminal investigation. And so, we couldn't essentially, the IRS could not have a criminal investigation going on and use the civil summons process to further it. So, there are protections built in. I can't say that if information were developed through this civil process, that a criminal referral could not be made. That certainly could happen. Oftentimes, the IRS does get information through investigations of one taxpayer that may lead to a criminal investigation of another taxpayer. And Congress certainly anticipated that in giving the IRS this broad authority. And the Supreme Court has said that unless there's a specific congressional expressed intent to limit that authority, the courts should not do that. And so, you're right, there is a concern. But again, there are checks on that. First- So, hypothetically, if this civil investigation of someone like Ms. Hax provisions, would, how would you protect the information that's obtained in the civil case against being used in the criminal case? So, Your Honor, if that were to happen, the IRS has a system of, that's been put in place after the TWEAL case, largely, to address that. And so, if the IRS were to gather civil information and the agent or someone else were to believe that that was sufficient to establish a criminal case against Ms. Byers, the IRS has fraud technical advisors that would be consulted about whether it meets a standard for criminal action. Even if they approve that, it would have to go through multiple levels of approval within, to even get to IRS criminal investigation. It would be reviewed by IRS CT counsel, which is criminal tax counsel, and ultimately would come to DOJ criminal section before any prosecution would move forward. So, there are numerous- All of those protections and all of that review would be with the information they got through the subpoena in front of them. Yes, Your Honor, that is correct. So, the only problem- My question was, could the information that's discovered in the civil be used in the actual criminal prosecution? It's possible, Your Honor. I can't say for sure because the state- Remember, the power factors don't go to admissibility. This just goes to whether or not the IRS can, under the civil- Well, tell us what the prohibition is on using the information from the subpoena in a subsequent criminal case. Your Honor, I'm not aware of any prohibition on using it. Obviously, it would have to meet the standards of admissibility and the rules of evidence with respect to being admissible in a criminal case, but there's no prohibition as long as the IRS is not using the civil procedures to further an ongoing criminal investigation. But there is no- As Agent Conroy said, there is no ongoing criminal investigation here. So, the IRS is not engaging in that type of conduct. I'm a little puzzled by this cart before the horse. It seems like that's not true at all. The- I just- It's really amazing. I mean, obviously, the U.S. Supreme Court has the rules, but I really find it amazing that this could be used in a criminal case. Has there been any criminal case that has challenged the use of material that is obtained through a third-party summons of the nature here? Your Honor, I'm not aware of any criminal case involving a challenge to a third-party summons under 7609. There have been criminal cases where it's been challenged under 7602s of the broad summons authority, again, going back to the TRIA line of cases, but I'm not specifically aware of one involving a third-party summons or John Doe summons. But I can- If the Court is interested, we'd certainly be happy to send in a supplemental brief if we can identify any relevant authority. Well, another question is, were the constitutional issues that we have been roaming around here, were they raised in this case, or are we just speculating as judges here about hypotheticals? Your Honor, they weren't specifically raised. We didn't brief those particular issues. We were- Our briefing was focused on the Powell case and 7609-F. And did your opponent raise them? I don't recall Mr. Weininger's brief specifically raising those particular questions. However, to be fair, in his reply brief, I do believe he cited a line of cases where he was focusing on the argument about reasonableness. And what I was going to argue at one point if we got to that point was that those line of cases really turned to scope, undue burden, breadth, and Fourth Amendment issues in some of those cases, like the McLean VEOC case. And so, while I don't recall in the appellant's brief specifically citing the constitutional questions, some of the cases cited do touch on those. So, to be fair, yes, some of the cases do talk about that. Well, I guess to answer your question, the statement of issues by the appellant are not whether under the statute they must articulate a reasonable basis. And the issues- We decide the cases based upon the statement of issues. And to answer the question, no, constitutional issues are not before us. At least that's my understanding. Yes, I would agree with that, Your Honor. I don't think they raised it in one of the issues. That is certain. But I do understand Your Honor's concern, of course, about the use of information. One of the challenges of this case, and it's true, the affidavits and the declarations from these revenue agents oftentimes, as Mr. Weininger noted, lack some specificity as to the actual elements of proof, the factual basis to prove the taxpayer committed a violation. And certainly in the Progovich case he cited, there was more detail. But in other cases, including in Gertner, where the prima facie show of the court, the First Circuit found that the prima facie showing was met. And even when the court called the declaration, they are bare bones and lacking any factual basis or factual assertions. The truth is that the agents just don't have that information. In Progovich, the agent was further along in the investigation had already received materials from other summonses. In this case, Agent Conroy has received no documents with respect to misfires, except for a Bank of He doesn't have, he wouldn't have had a basis to put down for the facts. What's also unique about this case, the underlying liability or the investigation goes to promoter penalties. And promoter penalties are a little unique because you're not focusing on the 1040, the tax return of the actual person, misfires in this case. Promoter penalties go to whether misfires aided and abetted or directly marketed tax shelters to third parties. Through entities, oftentimes, and also involving cashflow issues and fees paid to the promoter. And so that's, again, one reason why we're not focusing so much on misfires, you know, income tax 1040. But we have to incorporate these third parties and have to incorporate these entities, because that goes to the entire purpose of the penalty. The penalty is really always relates to third parties and always relates to the interaction of the promoter with those parties. And so that's how would she, how would she know this? Is there a way based on any of the materials that we have that she has, that she would know this? Well, an agent convoys declaration in paragraph four, he does make he does cite the promoter penalties. He also in his declaration, paragraph five notes that he sent a letter informing her on October 5th of 2018, that she was under investigation for violation of the penalty, the promoter penalties. So misfires was aware of this, of the purpose and the direction of this investigation. And she would know that that that could involve third parties. Again, perhaps she committed nothing wrong, but she at least would be informed that the scope of the investigation would include both her and potential other entities or persons to which she may have promoted an abusive tax shelter. Your opponent started out with the argument that we should be applying the 7609 F2 to this situation. Are there any cases on point that you would like to point us to, to present your view? Your Honor, the most direct case on point is actually the Gertner case on the first circuit that Mr. Weininger noted. And if you look at page 72 footnote eight, it actually says that the reasonable basis under Supreme Court in Powell differs significantly from the, from 7609 F. That is the most direct on point authority. I would also note that the history of how the 7609 was enacted also goes through the dual purposes. And that really, and that comes from two cases, Donaldson and Visaglia, one of John Doe, one of third party and the IRS enacted 7609 A and B in response to Donaldson and 7609 F in response to Visaglia going down two different routes, offering two different protections. So I see my time's up. Counselor, could I just, I just want to make sure I'm getting one part of this. So I get the point, an audit kind of illustrates your perspective. So you have a return, a relationship between the taxpayer and somebody else that generates red flags. You're allowed to have an audit that doesn't require any great trigger. You ask the individual to cooperate. We need more information. This, like I said, red flags, would they, would the IRS be able to use the subpoena power? So for example, in this very case, she said, no, I'd rather not cooperate. Could they subpoena the bank records from her with the same minimum threshold or that doesn't work? Is that only for third parties? In terms of the 7602 summons power, they could issue a summons directly to misfires. Yes, that is correct. And it would be the same Powell-like standard. That's correct. It would be the same Powell-like standard. The only difference would be you don't have under 7609 A and B, there's the notice provisions and the sort of provisions that allow the subject to quash, to move to quash. All right. Thank you. Thank you. Thank you. Eberl? Your mic is not on. Thank you. I would like to address the government's assertion that Gertner is the only case on point, aside from Tiffany Fine Arts in the Supreme Court, that somehow says that the standard under 7609 F is higher than under Powell. I'm reading from a case from the 9th circuit at Samuels Kramer. This is exactly what it says verbatim. This is page 1346 of the opinion. There's no indication that Congress, in enacting 7609 F as a safeguard against IRS abuse of John Doe summonses, intended the section to convey a broader substantive protection of unknown than of known taxpayers. That's what the 9th circuit is saying here in Samuels Kramer. It's what the 3rd circuit said in Pittsburgh Trade Exchange, and it's what the 2nd circuit said in Ray John Doe's. It's the same fundamental premise, which is that 7609 F does not grant broader substantive protection to John Doe's than what a typical taxpayer would have under 7609 A. Isn't a point that F provides a particular set of benefits, and A and B provide a different, but similar set in terms of the notice and the opportunity to intervene? No. The only difference between 7609 A and B, as opposed to 7609 F, is merely procedural, and that's exactly what the Supreme Court said in Tiffany Fine Arts. The only difference between the two is that the district court steps in to protect the unknown taxpayer's rights. That's procedural protection. It's not a substantive protection. The substantive protection comes from Powell and the cases that Powell relies upon, and to address the point from Judge Griffin as to our briefing, it's absolutely true. None of our section headings mention the Fourth Amendment. However, Powell cites and relies upon two cases, and we explored this in our reply brief. Those two cases, Morton Salt and Oklahoma Press Publishing Company, both reference a reasonableness requirement in the administrative subpoena context. Both those cases relied upon a Fourth Amendment explication of that standard, so there is a Fourth Amendment component to Powell. Granted, Powell didn't say that explicitly, but this was before the time the Supreme Court really applied an, I'd say, an analytic rigor that we're used to today. In the 1950s and 60s, unfortunately, they did not. With respect to the question posed to the government about whether this information can be used in a subsequent criminal investigation, it absolutely can. I've even seen it once in private practice where it was used, so I want to put that concern or that question aside because it can be used in a subsequent criminal investigation. With respect to the cart before the horse argument that the government makes, we're not putting any cart before the horse. What we're saying is that on the reasonable basis issue is that there needs to be a reasonable basis to suspect that there's been a violation of the code. There's no probable cause requirement. We're not doing that here, and I don't want the government to conflate that issue. We're in no way saying that the government must somehow prove that the taxpayer or the target violated the code at the outset when they submit a declaration to enforce the summons. That's just not what we're saying at all. Hypothetically, if your client, instead of her bank records being subpoenaed, if your client was subpoenaed directly, where would you get the reasonable basis requirement from? Would you be it from Powell and the cases that Powell relies on? Is that where you're getting it from? Originally, yes. Originally, it would come from the cases that Powell relies upon. The reasonable basis standard derives from there, and Powell itself said that it in no way diminishes the substantive rights of a party to contest the summons. I've read Powell, and I will certainly go back and reread it, but are there cases that are directly on point that would say when it's a subpoena directly to the taxpayer that the IRS has to show a reasonable basis before the taxpayer can be compelled to provide the info? The only case, again, the only cases I can rely upon for that situation would be Powell itself and the two cases Powell relies upon. Okay. Thank you. Sure. Thank you. Thank you. Thank you both for your argument. The case will be submitted, and you may disconnect as you've been instructed how to do. Thank you. Thank you. Thank you.